Skoglund, J.,
¶ 27. concurring. I agree with the majority’s legal analysis of all the issues presented in this appeal. I write separately to voice concern for what I perceive as misuse of the incapacitated person statutes. I agree with the court below when it wrote, “[T]he court does believe Defendant may have been improperly detained under improper application of the incapacitated persons statute.” And, I express concern about the quality and reliability of the so-called “screening” that took place for defendant.
*534 ¶ 28. According to the court below, the only interaction between the screener and defendant was when defendant asked about his wife’s anticipated arrival and the screener informed him that his wife was on her way. Then, the defendant informed the screener that he did not wish to answer her questions. Quoting from the trial court’s decision, “Ms. Aldrich looked at Defendant’s eyes and confirmed that he was ‘incapacitated.’ ” At that point, defendant was shackled and taken to the correctional facility.
¶ 29. The court below and the majority here agree that the post-arrest and processing events that gave rise to defendant’s detention at the correctional facility as an incapacitated person are not connected with the evidence of impairment that defendant sought to suppress. I can agree with that legal assessment.
¶ 30. However, if one considers the statutory enactments relied upon, it gives this writer pause. Chapter 94 of Title 18 of the Vermont Statutes Annotated describes the policy and programs for addressing alcohol and drug abuse in Vermont. In 18 V.S.A. § 4802, we find definitions. Under § 4802(7):
“Incapacitated” means that a person, as a result of his or her use of alcohol or other drugs, is in a state of intoxication or of mental confusion resulting from withdrawal such that the person:
(A) appears to need medical care or supervision by approved substance abuse treatment personnel . . . to assure his or her safety; or
(B) appears to present a direct active or passive threat to the safety of others.
¶ 31. Nothing in the record supports a conclusion that defendant was incapacitated as defined in the statute such that he should have been incarcerated or taken into protective custody pursuant to 18 V.S.A. § 4808.
¶ 32. The screener claimed to identity incapacitation as described in the statute after one cogent, appropriate inquiry from defendant followed by his declining to answer her questions and after “looking in his eyes.” Really? Where is the evidence of mental confusion or a need to assure his safety? See id. § 4802(7). But, claiming to rely on this assessment, the officer then implemented his authority under § 4808 to take defendant into protective custody, notwithstanding the fact that defendant’s wife was on her way, at least according to the screener.
*535 ¶ 33. I would point out further that defendant had the capacity to make repeated decisions of legal import during processing, he was calm, compliant and nonthreatening throughout his time at the barracks, and he had the ability to take an evidentiary breath-alcohol test. Those facts do not support a conclusion that the defendant was incapacitated.
¶ 34. Chapter 94’s purpose is to ensure “alcoholism and alcohol abuse are correctly perceived as health and social problems rather than criminal transgressions.” Id. § 4801(a). The negligible screening of defendant subverts this policy, rather than furthering it. We must always be guided by the “whole of the statute and every part of it, its subject matter, the effect and consequences, and the reason and spirit of the law.” In re P.S., 167 Vt. 63, 70, 702 A.2d 98, 102 (1997).
¶ 35. I am authorized to state that Justice Robinson joins this concurrence.